I respectfully dissent from the majority decision to reverse the Deputy Commissioner's Opinion and Award. The undersigned believes that the greater weight of the medical testimony supports the denial of benefits as concluded by the Deputy Commissioner.
The majority relies on the testimony of Drs. Robert A. Shaw and Woodhall Stopford and assigns little weight to that of Dr. D. Allen Hayes, in opposite to the Opinion and Award of Deputy Commissioner Ford. A close reading of the testimony of Drs. Shaw and Hayes shows that their conclusions regarding the relationship between plaintiff's condition and her occupational exposure are based upon numerous facts not supported by the evidence, and dictates that their opinions should be given less weight than that of Dr. Hayes.
Dr. Shaw testified that plaintiff provided him with a history of working in a textile mill for twenty-seven years with exposure to unspecified types of fibers and dust generated from making yarn. On cross examination, Dr. Shaw admitted that he made up his mind regarding occupational exposure based on a misconception that plaintiff was exposed to cotton dust and fibers, and that the exposure was "significant." When informed that plaintiff's possible exposure was limited to synthetic fibers, he admitted that he had never read a study on synthetic dust fibers, and could not state that exposure to synthetic dust fibers placed a worker at an increased risk of developing pulmonary problems over that of the general public. In addition, he stated that if plaintiff's exposure to dust was less than significant, it might affect his opinion regarding occupational exposure as a cause of plaintiff's problems.
Dr. Shaw gave plaintiff a peak flow meter to measure her breathing capacity, with instructions to keep a record of readings before she went to work, during work, and in the evenings after she finished work. The majority finds as a fact that the readings demonstrated that plaintiff's breathing was worse in the evenings on days that she worked and did not show a drop off on days that she did not work. However, Dr. Shaw admitted that the measurements did not show a clear, obvious pattern that was different on workdays as compared to vacation days. Further, he stated that there were some fairly wide variations in plaintiff's peak flow at any given time, whether she was working or not, which is consistent with someone suffering from asthma.
Plaintiff was out of work and so not exposed to any dust or fibers from May 1989 to December 1990. Dr. Shaw admitted that there was no significant change in plaintiff's pulmonary function tests during this period, despite a lack of exposure to dust and fibers for eighteen to nineteen months. Again, he stated that this was consistent with someone who had asthma.
Lastly, Dr. Shaw admitted that when he made up his mind regarding plaintiff's occupational exposure, he was unaware of any possible exposure to chemicals. When he was given Dr. Stopford's report regarding chemicals present in plaintiff's workplace, he mistakenly presumed she was exposed to all the chemicals on the list. When questioned regarding plaintiff's possible exposure to chemicals, he admitted that he did not know of plaintiff's exposure to any specific chemicals, or the duration of any presumed exposure.
Based on Dr. Shaw's own testimony, it is clear that his opinions and conclusions regarding plaintiff's condition and any occupation connection thereto was based on erroneous information and resulting misconceptions. Accordingly, his testimony should be given little weight.
Dr. Stopford examined plaintiff on a single occasion, and primarily based his conclusions upon reviewing notes from other physicians and the MSDS reports listing chemicals present in the workplace. He admitted that he was not a pulmonary specialist, and stated that he would defer to Dr. Hayes regarding issues relating to that field. Dr. Stopford indicated that his opinions were based upon plaintiff's experiencing respiratory symptoms when exposed to cleaning solvents and synthetic dust. However, there is no testimony, including that of plaintiff's, which supports such a history. Further, he assumed a higher level of exposure to paints, thinners, solvents, air-conditioning additives and dyeing materials than is supported by the evidence. For these reasons, Dr. Stopford's conclusions regarding the relation between plaintiff's condition and her occupational exposure should be given little weight as compared to that of Dr. Hayes, the accepted expert in this field.
Dr. Hayes, an occupational pulmonary expert and member of the Industrial Commission's Textile Occupational Disease Panel, is clearly the best qualified expert to guide the Commission in evaluating the relationship between plaintiff's condition and her occupational exposure. Dr. Hayes concluded that plaintiff's condition is most likely intrinsic asthma. He examined the peak flow data reviewed by Dr. Shaw and concluded that they did not show a particular trend or a worsening of plaintiff's condition while at work, and that the results were consistent with bronchial asthma. This position is supported by the lack of change in plaintiff's condition during her extended period away from the workplace. His examination of the available literature on the subject led him to the conclusion that synthetic textile workers are not at an increased risk of developing lung disease than that of the general public. Further, while recognizing plaintiff's exposure to chemical irritants in the workplace, Dr. Hayes noted that none of the alleged exposures are recognized as being related to occupational asthma, none can cause symptoms like those experienced by plaintiff in the doses plaintiff could have sustained, and no other workers in the plant have plaintiff's symptoms.
The testimony of the expert witnesses, along with the lay testimony regarding the working conditions in defendant's plant, demonstrates that the opinions and conclusions of Drs. Shaw and Stopford are unsupported. Furthermore, neither has the experience or expertise of Dr. Hayes in the area of occupational pulmonary disease. For these reasons, the majority erred in according greater weight to the testimony of Drs. Shaw and Stopford, and using their conclusions as a basis for reversing the Opinion and Award of the Deputy Commissioner. I vote to give greater weight to the medical testimony of Dr. Hayes, and affirm the Deputy Commissioner's denial of benefits.
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER